1
2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

3
4
5
6
7
8
9

JORGE A. PARET-RUIZ,

    Plaintiff,

    v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

Civil No. 11-1404 (GAG)

10
11

## <u>OPINION AND ORDER</u>

12
13
14
15
16
17
18
19
20

    Plaintiff Jorge A. Paret-Ruiz ("Plaintiff") brings this action against the United States of America ("USA") and the Drug Enforcement Agency ("DEA") (collectively "Defendants") seeking damages for his arrest, prosecution and imprisonment. (See Docket No. 1 at ¶ 5.) Presently before the court is Defendants' motion to dismiss (Docket No. 10), which argues sovereign immunity bars Plaintiff's action against the USA and DEA, the DEA is an improper defendant, the action is barred by the statute of limitations, and the issuance of a grand jury indictment shields the government from a malicious prosecution claim. Plaintiff responded to this motion at Docket No. 13. After reviewing these submissions and the pertinent law, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

21

    **I.**    **Standard of Review**

22
23
24
25
26

    "The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

27
28

    Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED.R.CIV.P. 12(b)(6). To survive a Rule

Civil No. 11-1404 (GAG)                    2

12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  The court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555.  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 556 U.S. 662, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

## II.    Factual and Procedural Background

On August 9, 2005, an indictment was returned against Plaintiff, Efrain Santana-Oritz ("Santana") and Adalberto Coriano-Aponte ("Coriano") for conspiracy to import with the intent to distribute and possession with intent to distribute five or more kilograms of cocaine.  (See Docket No. 1 at ¶ 24.)  Plaintiff was arrested on August 12, 2005.  (See id. at ¶ 25.)  During his arrest, Plaintiff claims he was physically abused and suffered injuries necessitating five stitches to his right eyebrow.  (See id. at ¶ 28.)  The indictment included a count of forfeiture to obtain Plaintiff's 1999 Ford F-550 flat bed tow truck, 1995 Dodge RAM 2500 pickup truck, and 1996 Sea Hawk vessel and trailer.  (See Docket No. 10 at 5.)  The Sea Hawk vessel and trailer and the Ford F-550 tow truck were administratively forfeited on March 10, 2006.  (See id.)  The Dodge Ram 2500 was administratively forfeited on March 16, 2006.  (See id.)

According to the present complaint, the events leading to the indictment and arrest are as follows.  In 2003, a confidential informant of the Federal Bureau of Investigation ("FBI") was approached by Plaintiff, who was supposedly interested in purchasing a boat in order to transport drugs to Puerto Rico.  (See Docket No. 1 at ¶ 8.)  The FBI made initial contact and subsequently informed the DEA.  After the DEA took over the investigation, Plaintiff maintained a relationship

**Civil No. 11-1404 (GAG)**                    3

with undercover DEA agents. (See Docket No. 1 at ¶ 13.) DEA agents wanted to discuss Plaintiff's potential purchase of a boat to transport drugs in a deal with his supposed contacts with cocaine dealers. (See id. at 13.) However, Plaintiff denies in his complaint, Defendants' allegation that he later discussed the transportation of drugs with Santana and undercover agents. (See id. at ¶ 21.)

At all times, Plaintiff maintains he was not interested in purchasing a boat for any illegal purpose. (See id. at 13.) However, Plaintiff alleges that at one point, after much harassing and cajoling by a DEA agent, Plaintiff responded that he would like to purchase the boat. (See id. at ¶ 10.) Plaintiff claims Defendants promoted and encouraged his drunken state in order to get him to agree to the purchase. (See Docket No. 1 at ¶¶ 8-10.) Plaintiff claims he fabricated stories that he knew individuals who were interested in trafficking drugs in hopes that Defendants would stop asking him about drugs and drug trafficking. (See id. at ¶ 16.) Plaintiff claims that, in an attempt to dissuade Defendants from asking him to take part in drug transactions, he stated he would only participate for extremely high sums of money. (See id. at ¶ 20.) Plaintiff denies any implication that he was interested in the boat for the purposes of transporting drugs. (See id. at ¶ 13.) At some point, DEA agents loaned Plaintiff money. (See Docket No. 1 at ¶17.) While Plaintiff denies the money was to be used to purchase drugs, Defendants' claimed the money was for the purchase of drugs in Antigua. (See id.)

Plaintiff was criminally tried for the two counts listed in the indictment. (See Docket No. 1 at ¶ 26.) Plaintiff claims Defendants made many false statements throughout the course of the trial. (See Docket No. 31.) Plaintiff was subsequently found guilty of both charges and sentenced to 180 months in prison. (See id. at ¶¶ 26 & 31.) Plaintiff rejected an offer by the government for a reduced sentence in return for a waiver of his right to appeal. (See id. at ¶ 33.)

Upon entering the federal correction institution, Plaintiff states he was harassed and threatened. (See Docket No. 1 at ¶ 30.) Plaintiff claims Agent Moreno ("Moreno"), an agent of Defendants, gave instructions to other inmates to make Plaintiff's "life miserable in confinement." (See id.) This command by Moreno supposedly led to regular beatings, provocations and harassment

**Civil No. 11-1404 (GAG)**                    4

suffered by Plaintiff while he was incarcerated.  (See id.)  Plaintiff spent more than two years in

federal prison pursuant to this conviction.  (See id. at 34.)

On May 19, 2009, the United States Court of Appeals for the First Circuit reversed Plaintiff's

conviction and instructed the District Court to vacate Plaintiff's sentence and to enter a verdict of

not guilty.  U.S. v. Paret-Ruiz, 567 F.3d 1 (2009).

On September 7, 2010, the DEA received a Standard Form 95 claim from Plaintiff alleging

damages.  (See id. at 6.)  Plaintiff claimed damages of $585,000 in damages for his physical injuries

and for the forfeited vehicles.  (See id.)  The DEA denied Plaintiff's claim on November 2, 2010.

(See id.)  Plaintiff filed the present complaint on April 29, 2011, under the Federal Torts Claim Act

("FTCA") (Docket No. 1).

### III.    Discussion

#### A.    DEA as an Improper Defendant

Defendants argue the DEA is an improper defendant because only the United States is a

proper defendant in an action under the FTCA.  (See Docket No. 10 at 8.)  Plaintiff does not address

this assertion by Defendants.  The court finds Defendants are correct as both statutory and case law

agree that only the United States may be a named defendant in an action under the FTCA.  See 28

U.S.C. § 2679;[1] Aviles-Diaz v. U.S., 194 F. Supp. 2d 85, 86 (D.P.R. 2002).  Therefore, Defendants'

motion to dismiss the DEA as a defendant is **GRANTED**.

#### B.    Assault and Battery Barred by Sovereign Immunity

Defendants next argue Plaintiff's claim of assault during his arrest cannot proceed because

the claim is one of excessive force that must be analyzed as a constitutional violation.  (See Docket

No. 10 at 7.)  Defendant argue that while Congress abrogated sovereign immunity for the torts of

---

[1] 28 U.S.C. § 2679(a) states:
The authority of any federal agency to sue and be sued in its own name shall not be
construed to authorize suits against such federal agency on claims which are cognizable
under section 1346(b) of this title, and the remedies provided by this title in such cases
shall be exclusive.

Civil No. 11-1404 (GAG)                              5

assault and battery, it has not abrogated sovereign immunity for constitutional violations.  (See id.)

Typically, a claim of this nature arises through Section 1983 as a Bivens action.  See Bivens v. Six

Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  However, in order

to successfully bring a Bivens action, Plaintiff must sue the federal officials in their individual

capacities.  See Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).  Plaintiff chose not to sue

individual federal officials and states he is not suing for constitutional violations; rather, he is suing

under tort law.  (See Docket No. 13 at 3-4.)

        The issue is murky because Plaintiff titles his second cause of action, "Excessive Force" and

proceeds to use the excessive force standard to state a claim for assault during his arrest.  (See

Docket No. 1 at ¶¶ 43-46.)  The use of this language confuses two legal causes of action, the

judicially created Bivens action and the statutorily created FTCA action.  See Ting v. United States,

927 F.2d 1504, 1513-14 (9th Cir. 1991).  A Bivens action protects against violations of the

constitution, while a FTCA action protects against violations of state law.  See id. at 1513.  It is

Plaintiff's decision whether to sue under Bivens, the FTCA, or both.  See id.  In this case, even

though Plaintiff uses language derived from Bivens to state his claim, Plaintiff has made clear in his

brief opposing dismissal that he is not seeking damages for a constitutional violation, but rather for

violations of state tort law under the FTCA.  (See Docket No. 13 ¶¶ 5-6.)  Therefore, the

government's motion to dismiss the assault claim during the arrest is **DENIED**.  Having clarified

his position, it is noted that Plaintiff has waived any claim to damages arising out of his arrest due

a constitutional violation under Bivens.

                C.    **Assault, False Arrest, and False Imprisonment are Barred by the Statute**

                      **of Limitations**

        Defendants argue Plaintiffs' claims of assault, false arrest and false imprisonment are

untimely because Plaintiff did not present the claims to the DEA within the two year statute of

limitations used in actions against the United States.  The FTCA states:

            A tort claim against the United States shall be forever barred unless it is presented
            in writing to the appropriate Federal agency within two years after such claim accrues
            or unless action is begun within six months after the date of mailing, by certified or

**Civil No. 11-1404 (GAG)**                    6

registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  Therefore, tort claims under the FTCA are barred unless presented to the proper federal agency within two years after such claims accrue.  See Fisher v. U.S., 959 F.2d 230, (1st Cir. 1992).

### 1.      Assault

Plaintiff claim seeks damages for  injuries sustained during his arrest on August 12, 2005.  (See Docket No. 25-27.)  Plaintiff filed an administrative tort claim on June 4, 2010, claiming damages due to these injuries.  (See Docket No. 10 at 10.)  The filing of this administrative claim falls well outside the two year limitations period.  The injuries suffered during his arrest were known to Plaintiff at the time they occurred and are not subject to tolling.  See Donahue v. U.S., 634 F.3d 615, 623 (1st Cir. 2011) (holding discovery rule can apply to claims arising under the FTCA).  Because Plaintiff did not exhaust the administrative remedies within the time period allotted by statute, the court does not have jurisdiction to hear the claims at the present time.  See Barrett ex rel. Estate of Barrett v. U.S., 462 F.3d 28, 38 (1st Cir. 2006) (citing Acosta v. U.S. Marshals Serv., 445 F.3d 509, 513 (1st Cir. 2006)).  Therefore, the court **GRANTS** Defendants' motion to dismiss Plaintiff's claim of assault during his arrest.

### 2.      False Arrest and False Imprisonment

Plaintiff's false arrest and imprisonment claims necessitate a different analysis because Plaintiff was arrested pursuant to an indictment and imprisoned after a guilty conviction that was later reversed on appeal.  (See Docket No. 1 ¶ 33.)  Plaintiff was arrested on August 12, 2005, and imprisoned shortly after his June 19, 2006 trial ended.  (See Docket No. 1 ¶¶ 25-27.)  A strict application of the two year statute of limitations would bar Plaintiff's claim because Plaintiff did not file an administrative claim until June 4, 2010.  (See Docket No. 10 at 10.)  However, tolling may apply to this case.  If the statute of limitations was tolled due to the discovery rule until the First Circuit reversed Plaintiff's conviction on May 19, 2009, then Plaintiff's administrative filing would have been timely.  (See Docket No. 1 ¶ 32.)

**Civil No. 11-1404 (GAG)**                    7

The First Circuit has stated that an FTCA claim generally accrues at the time of injury. <u>See</u> <u>Donahue</u>, 634 F.3d at 623.  However, certain circumstances allow the date of accrual to be later than the date of the injury. <u>See id.</u>  This occurs when the injury or its cause are not apparent at the date of the injury. <u>See id.</u>  The discovery rule sets the date of accrual of an injury at the time when the plaintiff knows or should reasonably know the cause and the existence of the injury. <u>See id.</u> (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122 (1979)).  This rule is objective and requires the existence of the injury to be inherently unknowable at the time the injury occurred. <u>See</u> <u>Gonzalez v. U.S.</u>, 284 F.3d 281, 289 (1st Cir. 2002).  An injury is inherently unknowable if it is, "incapable of detection by the wronged party through the exercise of reasonable diligence." <u>See id.</u> (quoting <u>Geo. Knight & Co. v. Watson Wyatt & Co.</u>, 170 F.3d 210, 213 (1st Cir. 1999)).  Once the injured party knows of the injury, or should reasonably know of the factual basis for the claim, the date of accrual is set and the statute of limitations begins to run. <u>See</u> <u>Donahue</u>, 634 F.3d at 623.  This approach leaves intact the statute of limitations period of two years, while allowing claims by plaintiffs whose injuries have not manifested within two years of the injury. <u>See id.</u>

Defendants argue Plaintiff's false arrest and false imprisonment claim accrued at the time of his arrest on August 12, 2005. (<u>See</u> Docket No. 10 at 10.)  Therefore, Plaintiff's claims are untimely because he did not file an administrative claim within two years and is thus presently barred from bringing these claims. (<u>See id.</u>)  But these claims are unlike Plaintiff's assault claim.  Plaintiff did not have a cause of action against the government while his conviction was valid.  A false arrest and false imprisonment claim pursuant to a proper arrest and subsequent incarceration is doomed to fail. <u>See also</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994) (holding Section 1983 claim cognizable only if conviction or sentence has been invalidated).  It was not until the First Circuit reversed Plaintiff's conviction that his arrest and imprisonment, potentially, became an injury to Plaintiff. Accordingly, the accrual date for these claims is May 19, 2009. (<u>See</u> Docket No. 1 ¶ 33.)  Based on this date, Plaintiff had until May of 2011 to file his administrative claim, which he did on June 4, 2010. (<u>See</u> Docket No. 10 at 10.)

While other defenses may ultimately shield the government from liability at a later stage in

**Civil No. 11-1404 (GAG)**                                      8

this litigation, the court will not outright bar these claims as untimely.  Applying the discovery rule

to these claims the court finds the statute of limitations is not violated.  See Donahue, 634 F.3d at

623-24.    Therefore,  the  court  **DENIES**  Defendants'  motion  to  dismiss  the  false  arrest  and

imprisonment claims due to the statute of limitations.

**D.    Taking of Property Claim is Barred by Sovereign Immunity and Statute**

**of Limitations**

Defendants argue Plaintiffs claims for property loss should be dismissed because these claims

are brought after the statute of limitations has run.  As the FTCA does not waive sovereign immunity

for constitutional violations, the two theories shall be analyzed separately.

**1.    Violation of the FTCA**

Defendants  seek  dismissal  of  Plaintiff's  deprivation  of  property  claim  under  the  FTCA

because sovereign immunity bars such a claim and because the claim is untimely.  (See Docket No.

10 at 12,14.)  The FTCA states:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against
> the United States, for money damages, accruing on and after January 1, 1945, for injury
> or loss of property, or personal injury or death caused by the negligent or wrongful act
> or omission of any employee of the Government while acting within the scope of his
> office or employment, under circumstances where the United States, if a private person,
> would be liable to the claimant in accordance with the law of the place where the act or
> omission occurred.

28 U.S.C. § 1346(b)(1).  This provision waives sovereign immunity and allows plaintiffs to bring

suit against the United States for torts committed by federal employees.  See Ali v. Fed. Bureau of

Prisons, 552 U.S. 214, 217-18 (2008).  However, Congress exempted certain categories of claims

from this waiver.  See 28 U.S.C. § 2680 (2011).  Pertinent to this discussion is subsection (c) which

states:

> Any claim arising in respect of the assessment or collection of any tax or customs duty,
> or the detention of any goods, merchandise, or other property by an officer of customs
> or excise or any other law enforcement officer, except that the provisions of this chapter
> and section 1346(b) of this title apply to any claim based injury or loss of goods,
> merchandise, or other property, while in the possession of any officer of customs or
> excise or any other law enforcement officer, if–
> (1) the property was seized for the purpose of forfeiture under any provision of Federal
> law providing for the forfeiture of property other than as a sentence imposed upon

**Civil No. 11-1404 (GAG)**                    9

conviction of a criminal offense;
(2) the interest of the claimant was not forfeited;
(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c). Read together, Congress has waived sovereign immunity for property claims through Section 1346, but only if the four conditions listed in Section 2680(c) are met. See also Ali, 552 U.S. at 221-22.

The present case rests upon parts (2) and (4) of Section 2680(c) because it is clear the property was seized for the purpose of forfeiture and Plaintiff's interest was never remitted or mitigated. Also, the Supreme Court made clear in Ali that the term, "any other law enforcement officer" should be interpreted expansively, such as the DEA agents in this case. See Ali, 552 U.S. 222-23.

Defendants argue Plaintiff's conviction satisfies the fourth condition. (See Docket No. 10 at 13-14.) The court, however, cannot agree. While Plaintiff was convicted, his conviction was vacated by the First Circuit due to a lack of evidence to support such a conviction. See Paret-Ruiz, 567 F.3d at 7-8. The conviction does not stand and Plaintiff remains not convicted of the charges for which his property was taken. See id. Therefore, Plaintiff's claim meets the fourth condition.

The second condition is more problematic for Plaintiff. There is little room to debate the fact that Plaintiff's vehicles were administratively forfeited by the government on March 10 and 16, 2006. (See Docket No. 10 at 10.) However, a proper forfeiture proceeding necessitates a showing of probable cause. See Delaware Valley Fish Co. v. Fish and Wildlife Serv., 2009 WL 1706574, at *9 (D. Me. June 12, 2009). Plaintiff's complaint specifically alleges there was no probable cause for his arrest. (See Docket No. 1 ¶ 37.) Plaintiff's complaint also contains a number of accusations claiming Defendants lied in order to make the probable cause showing. (See Docket No. 1 at ¶¶ 11, 14, 17, 18, 19, 21, 29 & 31). As this is a motion to dismiss, and the court rules on such motions based on the allegations in the complaint, the court cannot discount the possibility that probable cause was lacking and, therefore, forfeiture was improper.

**Civil No. 11-1404 (GAG)**                    10

Plaintiff sought return of his property numerous times, the latest being in July of 2007. Defendants notified Plaintiff on July 19, 2007, for the final time, that the assets were forfeited. (See Docket No. 10 at 15.) Defendants may successfully demonstrate that probable cause existed at the time of the forfeiture, but to do so, the court must begin to weigh the evidence which it cannot at this stage of the proceedings.

At this time, the court does not find Section 2680(c) applies to Plaintiff's taking of property claim under the FTCA. While mere conclusory statements are not sufficient to survive a motion to dismiss, Plaintiff evidences his position with a First Circuit opinion reversing his conviction. This fact raises his claims beyond speculative and is better characterized as plausible. See Iqbal, 129 S.Ct. At 1949.

Defendants argue these claims are untimely because they are brought beyond the two years statute of limitations period contained within the FTCA. (See id.) The court adopts the previous analysis discussed for the false arrest and imprisonment claims and accordingly, **DENIES** Defendants' motion to dismiss the taking of property claim pursuant to the FTCA.

### 2.   Violation of the 5th Amendment

Alternatively, Plaintiff argues the Fifth Amendment to the U.S. Constitution provides relief against the taking of his property. (See Docket Nos. 1 at ¶ 49; 13 at ¶ 7.) Defendants raise the defenses of sovereign immunity and untimeliness of the claims. (See Docket No. 10 at 13-14.) The Fifth Amendment provides a cause of action against the government, requiring the government to pay, "just compensation" for any property taken. See U.S. Const. Art. V (" . . . nor shall private property be taken for public use, without just compensation." ("Takings Clause")); Philip Morris, Inc. v. Reilly, 312 F.3d 24, 35 (1st Cir. 2002) (stating Takings Clause applies to both real and personal property). Takings Clause claims are not open ended and must be brought within the applicable statute of limitations period. Golden Gate Hotel Ass'n v. City and County of San Francisco, 18 F.3d 1482, 1485-86 (9th Cir. 1994) (holding Takings Clause claims must be brought within time period established by the most analogous state statute of limitation). Because there is no federal law stating the limitations period for a Takings Clause action, the federal court must look

**Civil No. 11-1404 (GAG)**                    11

to state law. See id.; Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). If there is no state law directly on point, the court looks to borrow a statute of limitation from an analogous state statute. See Golden Gate, 18 F.3d at 1486. Puerto Rico state law provides a one year limitation period for inverse condemnation actions. P.R. Laws Ann. tit. 31, § 5298. Therefore, Plaintiff's constitutional taking of property action must be filed within one year of accrual.

Plaintiff's Takings Clause claim, pursuant to the U.S. Constitution, is time barred. Plaintiff's claim accrued when the First Circuit vacated his sentence on May 19, 2009. Plaintiff did not bring this action until April 29, 2011, well beyond the one year period established by Section 5298. Therefore, the court **GRANTS** Defendants' motion to dismiss Plaintiff's claims based on violations of the Takings Clause of the U.S. Constitution.

**E.     Malicious Prosecution is Barred by a Valid Grand Jury Indictment**

Defendants next move to dismiss Plaintiff's claims of malicious prosecution because: (1) Plaintiff is unable to demonstrate the prosecution was pursued with malice; and (2) Defendants had probable cause. (See Docket No. 10 at 10.)

In order for Plaintiff to make out his malicious prosecution case, he must demonstrate, "1) that a criminal action was initiated or instigated by the defendants; 2) that the criminal action terminated in favor of plaintiff; 3) that defendants acted with malice and without probable cause; and 4) that plaintiff suffered damages." Barros-Villahermosa v. U.S., 642 F.3d 56, 58 (1st Cir. 2011). Defendants only attack the third element where, accordingly, the court focuses its attention.

Defendants correctly cite to cases that hold a grand jury indictment is conclusive in demonstrating probable cause. See Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45, 49 (1st Cir. 2005). However, Plaintiff's complaint is rife with accusations that Defendants lied and misrepresented his statements and actions from his dealing with undercover officers all through trial. (See Docket No. 1 at ¶¶ 11, 14, 17, 18, 19, 21, 29 & 31.) These accusations, if true, could lead to the finding that law enforcement agents wrongfully obtained the grand jury indictment against Plaintiff. A grand jury indictment obtained under these circumstances is insufficient to show the probable cause necessary to defeat a claim of malicious prosecution. See Gonzalez Rucci, 405 F.3d at 49. In order for the

**Civil No. 11-1404 (GAG)**                12

court to determine whether the grand jury indictment was obtained through lies and misrepresentation, the court must weigh the evidence.  That process is best left for the summary judgment stage of litigation rather than the motion to dismiss stage.  Therefore the court **DENIES** Defendants' motion to dismiss the malicious prosecution claim at this time.

## F.    Injuries in Prison are Barred Due to Failure to Exhaust Administrative Remedies

The final claim Defendants seek to dismiss is Plaintiff's claim of physical injury sustained from attacks while in prison.  Plaintiff claims Defendants are responsible either because they were negligent in providing a safe environment or because they instigated the attacks against him by other prisoners.  (See Docket No. 1 at ¶ 57.)  However, Defendants argue the court does not have subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies prior to filing suit.  (See Docket No. 10 at 16-17.)  Section 2675 of the FTCA requires Plaintiff to present his claims to the DEA prior to instituting suit in court.  See 28 U.S.C. § 2675; Vega v. U.S., 68 F. Supp. 2d 113, 117-18 (D.P.R. 1999).  Only upon denial of Plaintiff's claim with the DEA, or if the DEA does not respond within six months, does the court have jurisdiction to hear the claim.  See 28 U.S.C. § 2675(a); Vega, 68 F. Supp. 2d at 117-18.  In order to meet this presentment burden, Plaintiff must file a Standard Form 95 or other written notification, accompanied by a claim for money damages.  See 28 C.F.R. § 14.2(a).  The First Circuit has interpreted this notification requirement to include sufficient information for the agency to investigate the claims and a damages amount.  See Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F.2d 16, 19 (1st Cir. 1993) (holding notice requirement of statute is lenient).

In this case, Plaintiff submitted a Standard Form 95 to the DEA on June 4, 2010, putting the DEA on notice of claims stemming from his arrest, imprisonment, prosecution, and seized property.  (See Docket No. 15-1 at 1-5.)  However, there is no mention of the physical injuries Plaintiff sustained while in prison, nor is there any mention of Defendants' negligence in protecting Plaintiff from such injuries while in prison.  (See id.)  It is crucial that Plaintiff put Defendants on notice of the claims in order to allow the administrative process proceed to its conclusion.  Plaintiff did not

**Civil No. 11-1404 (GAG)**                    13

put Defendants on notice of his claim of the injuries he sustained while in prison when he filed the Standard Form 95.  Therefore, Plaintiff is barred from raising this claim in court.  See Pearson v. U.S., 2011 WL 6426161 at *4 (D. Mass. Dec. 22, 2011).  For this reason, the court **GRANTS** Defendants' motion to dismiss Plaintiff's claim of injuries while incarcerated.

**IV.     Conclusion**

        For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss as to the DEA as an improper defendant, the assault during Plaintiff's arrest, the taking of Plaintiff's property pursuant to the Fifth Amendment to the U.S. Constitution and Plaintiff's injuries while in prison. The court **DENIES** Defendants' motion to dismiss as to Plaintiff's false arrest, false imprisonment, malicious prosecution and the taking of Plaintiff's property pursuant to the FTCA.


        **SO ORDERED.**

        In San Juan, Puerto Rico this 6th day of March, 2012.

                                        *s/ Gustavo A. Gelpí*

                                        GUSTAVO A. GELPI
                                        United States District Judge